UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EBRIMA KASSAMA,

                                        Petitioner,         No. 07-CV-6196 CJS

   -vs-

                                                                  DECISION AND ORDER

DEPARTMENT OF HOMELAND SECURITY (USICE):
CHARLES MULE, Facility Director, Buffalo Federal
(ICE) Detention Facility, Batavia, New York,

                                        Respondents.
_____

APPEARANCES

For Petitioner:                  Ebrima Kassama, *pro se*
                                         A73-062-922
                                         Buffalo Federal Detention Center
                                         4250 Federal Drive
                                         Batavia, New York 14020

For Respondent:               Gail Y. Mitchell, Esq.
                                         Assistant United States Attorney
                                         138 Delaware Avenue
                                         Buffalo, New York 14202

INTRODUCTION

     This is an action pursuant to 28 U.S.C. § 2241 in which Petitioner contends that his continued detention, pursuant to Section 241 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1231, pending his removal from the United States pursuant to a final order of removal, is unlawful.  Because the Court finds that Petitioner's continued detention satisfies INA § 241 and the due process standard set forth in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001), the application is denied and this action is dismissed.

1

BACKGROUND

Petitioner Ebrima Kassama ("Petitioner") is a native and citizen of the Republic of the Gambia ("Gambia"). In or about 1988, Petitioner, who was approximately 21 years of age, was admitted to the United States on a six-month non-immigrant visitor's visa. However, Petitioner remained in the U.S. unlawfully, and on April 27, 1994, he was convicted, in the New York State Supreme Court, New York County, of Manslaughter in the First Degree, in violation of New York Penal Law § 125.20, and was sentenced to an indeterminate term of imprisonment of 6 1/3 years to 20 years. On March 7, 1995, an Immigration Judge entered a final order of removal against Petitioner, which Petitioner never appealed. On July 25, 2006, Petitioner was released from state custody, and was taken into custody by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), where he remains pursuant to 8 U.S.C. § 1231(a)(6), which provides, in relevant part, that "[a]n alien ordered removed who is . . . removable under section 1227(a)(1)(C) . . . of this title . . . may be detained beyond the removal period."

On or about August 31, 2006, Petitioner filed a motion to reopen his immigration removal proceedings, and an Immigration Judge stayed Petitioner's deportation. However, on October 10, 2006, an Immigration Judge denied the motion to reopen, finding it to be procedurally defaulted, and vacated the stay of deportation.

On July 28, 2006, ICE sent a presentation packet, including a copy of Petitioner's Gambian Passport, to the Gambian Embassy in Washington, D.C., requesting the issuance of a travel document for Petitioner's return to Gambia. Subsequently, ICE contacted the Gambian Embassy several times to seek status reports on the request. On January 22, 2007, the Gambian Embassy indicated that officials in Banjul, Gambia,

were conducting an investigation concerning the request.  Specifically, Ousman Taal ("Taal"), the Gambian Ambassador's representative,  wrote:

> I acknowledge the receipt of your formal written request dated 28th July 2006, requesting for an expedited issuance of a traveling document to Mr. Ebrima Kassama to enable him to travel to Banjul, The Gambia.
>
> Please be informed that all the necessary documents pertaining to Ebrima Kassama's case have been submitted to the competent authorities in Banjul the Gambia for review.  Any decision taken after their investigation will be communicated to you positively.

(Answer and Return, Exhibit to Affidavit of George F. Scott).  Subsequently, ICE sent several additional requests to the Gambian Embassy, seeking a status report regarding the travel document request.  The most recent such request was in December 2007.  On December 12, 2007, the Gambian Embassy responded:

> I acknowledge the receipt of your traveling document request dated December 5, 2007 in the name of Ebrima Kassama who is believed to be [a] native and citizen of the Gambia.
>
> The sent photo copied passport number 88768 dated 1988 in the name of Ebrima Kassama believed to be old Gambia national passport from your office, has been changed twice since then due to security reason. [sic]
>
> The place Ebrima claimed to be from Badibou Salikene, Northern Bank of the country is where we are relying on to justifying [sic] his citizenship as a Gambian.
>
> Please be informed that investigation is on to justify Ebrima's citizenship as a Gambian, without which it will be very difficult for the Embassy to issued [sic] any traveling document in the name of Ebrima Kassama, or the issuance may take a longer period of time than expected.

(Respondent's Statement of Facts [#9]).

According to ICE, it has "successfully repatriated many aliens to . . . Gambia in recent years. DHS successfully removed 44 aliens to the Gambia in Fiscal Year 2004, 37 aliens to . . . Gambia in Fiscal Year 2005, and 23 aliens to . . . Gambia in Fiscal Year

3

2006." (Answer and Return, ¶ 14).  ICE states that there has been no indication that Gambian Officials will refuse to issue travel documents for Petitioner, and that it expects that such travel documents will eventually be issued. (*Id.*, ¶ ¶ 15-16).

In the meantime, ICE has conducted periodic reviews of Petitioner's detention status, and on January 11, 2007 and April 20, 2007, ICE determined that Petitioner should remain in detention pending his removal.  In the decision dated January 11, 2007, Respondent stated, in relevant part:

> ICE is currently attempting to secure a travel document for your removal from the United States. . . . .  Due to your severe criminal record, ICE considers you a threat to the community.  Your disregard for authority demonstrates a significant likelihood that you would fail to abide by conditions set forth if released from custody.  Based on these factors, ICE deems you a flight risk.

(Answer and Return, Exhibit to Affidavit of George F. Scott).

On April 18, 2007, Petitioner filed the subject petition, pursuant to 28 U.S.C. § 2241, alleging that his continued detention is unconstitutional.  Petitioner is not challenging the final order of removal, but is only challenging his continued detention pending his removal from the United States.  Petitioner maintains that Gambia is not likely to issue him travel documents in the reasonably foreseeable future, since, although he is a Gambian native, Gambia "does not recognize [him] as a native of that country anymore, due to lack of records of his birth there.  Thus, [he] has become Stateless." (Petition, ¶ 2).  Petitioner further states that he has contacted "many other countries other than his native Gambia, . . . to seek refuge, which has been proved to be futile." (*Id.*).  He also speculates that Gambia may be delaying the processing of his request due to the fact that he is a homosexual, and/or to the fact that he is in poor physical

health.

On April 30, 2007, this Court issued a Scheduling Order [#2], and on June 18, 2007, Respondent filed an Answer [#3] to the Petition and a Memorandum of Law [#4]. On July 6, 2007, Petitioner filed a traverse [#6], and on November 23, 2007, he filed a motion for summary judgment [#7]. Respondent filed an opposition [#8-#9] to the motion on December 21, 2007. On March 19, 2008, Petitioner filed additional documents in support of his application, styled as a "Request for Release" [#11] and Motion for Summary Judgment [#12], respectively.

## DISCUSSION

Petitioner brings this action pursuant to 28 U.S.C. § 2241(c)(3), which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The specific legal principles applicable to Petitioner's claim are clear:

> INA § 241, 8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal. It provides that, in general, "the Attorney General shall remove the alien from the United States within a period of 90 days" of the final removal order, INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A), and that "[d]uring the removal period, the Attorney General shall detain the alien," INA § 241(a)(2), 8 U.S.C. § 1231(a)(2). It further provides that certain classes of aliens, including inadmissible aliens and criminal aliens, shall continue to be subject to "supervision" even after the 90 day period expires if they have not yet been removed. INA § 241(a)(3),(6), 8 U.S.C. § 1231(a)(3),(6). The INS has interpreted the term "supervision" to include detention, and has maintained in the past that INA § 241 "sets no 'limit on the length of time beyond the removal period that an alien who falls within one of the Section 1231(a)(6) categories may be detained.' " *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (quoting Brief for Petitioners in *Zadvydas*, p. 22).
>
> In *Zadvydas*, the Supreme Court was faced with the challenge of

reconciling INA § 241's apparent authorization of indefinite executive detention with the Due Process Clause of the Fifth Amendment. In order to save § 241 from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699, 121 S.Ct. 2491. The Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing. *Id.* at 701, 121 S.Ct. 2491.

*Wang v. Ashcroft*, 320 F.3d at 145 -146 (footnotes omitted). As stated by the majority in *Zadvydas*,

[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas v. Davis*, 533 U.S. at 701, 121 S.Ct. at 2505. On one hand, to meet his burden, the alien is not required "to show the absence of *any* prospect of removal - no matter how unlikely or unforeseeable." *Id.*, 533 U.S. at 702, 121 S.Ct. at 2505. On the other hand, the alien does not prevail merely be demonstrating the absence of a repatriation agreement between the U.S. and his home country, where there is evidence that future negotiations between the countries may result in such an agreement. *Id.*[1]

In the instant case, Petitioner maintains that there are several reasons why there is no significant likelihood of his removal to Gambia in the reasonably foreseeable future.

---

[1] In applying these principles of law, the Court is required to construe the *pro se* Petitioner's papers liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

First and foremost, is the fact that Gambia has not said whether it will issue travel documents to him, despite the passage of almost two years. Further, in that regard, Petitioner indicates that a Deportation Officer at the Batavia detention facility, Vincent Pulcini ("Pulcini"), has told him that he does not believe that Gambia will issue travel documents in the reasonably foreseeable future:

> Mr. Pulcini had told me around the end of March 2007, that he could not get any travel documents for me from the Gambian Embassy; and I should wait for the next custody review after 180 days, that would be conducted by HQPDU [Headquarters Post-Order Detention Unit] Washington, D.C., and most likely I would be released from DHS detention.
> ***
> [On April 20, 2007, HQPDU determined that Petitioner must remain in custody pending deportation] I have subsequently spoken to Mr. Pulcini, several times who has [sic] told me that he did not believe that I would be removed anytime in the foreseeable future, and I may have to wait for another custody review.

(Petitioner's Affidavit ¶ ¶ 27-31).

Petitioner further contends that Gambia will not issue him travel documents because he is a "gay man," or alternatively, because he is in poor health. With regard to his homosexuality, Petitioner contends that the reason he sought to re-open his removal proceedings was because he wanted to seek asylum in the United States, based on his sexual orientation, since he maintains that homosexual men are humiliated and criminally prosecuted in Gambia. (*See*, Petitioner's Traverse at 19, indicating that "Gambia does not recognize them [gay men] as Gambians.").[2] Petitioner alleges that, in "violation of international law," ICE advised Gambian officials that he is homosexual,

---

[2]Presumably, Gambians also frown on persons who commit homicide. However, Petitioner does not suggest that his Manslaughter conviction will discourage Gambia from issuing travel documents. In any event, it is clear that nations such as Gambia regularly issue travel documents for individuals convicted of serious crimes, including so-called crimes of moral turpitude.

however, he has provided no proof of that.[3] (*See, e.g.*, Petitioner's Affidavit ¶ 48).  As for his alleged health problems, Petitioner states that he told a Gambian official, by telephone, that he had "severe health conditions," and that he "needed a liver transplant," to which the official responded that "Gambia would not be able to provide . . . medical care." (*Id.* at ¶ 18).  However, the Gambian official did not indicate that Petitioner's medical condition would affect Gambia's decision whether to issue travel documents.

Based upon all of the foregoing, the Court finds that Petitioner is not entitled to a writ of habeas corpus.  Essentially, the evidentiary proof in admissible form in the record establishes that: 1) Petitioner has been in custody awaiting deportation for approximately 21 months; 2) during that time ICE has contacted the Gambian Embassy numerous times to request the issuance of travel documents for Petitioner; and 3) the Gambian Embassy has indicated that it is investigating the request.  Although Petitioner has attempted to inject issues into the case relating to his sexual orientation and medical status, there is no evidentiary proof in admissible form to suggest that those matters have any bearing on whether Gambia will issue travel documents to him.  Moreover, although Petitioner alleges that Deportation Officer Pulcini stated that he did not think that Petitioner would be "removed anytime in the foreseeable future," there is no basis in the record for such an opinion, other than the passage of time from the initial request.  In

---

[3]Petitioner states that he spoke to a Gambian official who was aware that Petitioner had attempted to seek asylum, though there is no indication that the Gambian official knew why Petitioner had sought asylum.  Additionally, Petitioner states that after talking to the Gambian official, he "felt that something was wrong, as the interviewing person seems to be avoiding me; which I have felt, as if he knew that I was a gay man." (Petitioner's Affidavit ¶ 16).  Petitioner's suspicions in that regard are not evidentiary proof in admissible form.

any event, a subsequent statement from the Gambian Embassy indicates that Gambia is still investigating the matter. And finally, the Court notes that another Deportation Officer, Timothy Gunther ("Gunther"), has been handling Petitioner's case since November 2007. (Respondents' Statement of Facts, "Travel Document Issuance Log").

Based on these facts, the Court finds that Petitioner has failed to meet his initial burden under *Zadvydas*. However, even assuming, *arguendo*, that Petitioner has met his initial burden under *Zadvydas*, the Court nevertheless finds that Respondents have met their burden on rebuttal. In short, the evidence does not establish that there is no significant likelihood of removal in the reasonably foreseeable future. Instead, Gambia is presently attempting to verify Petitioner's citizenship. In that regard, Petitioner purportedly lived in Gambia for 21 years before coming to the United States, and still has family there. (*See*, Petitioner's Traverse [#6], Petitioner's Affidavit ¶ 3). Therefore, it seems likely that Gambian officials will be able to confirm Petitioner's citizenship, and issue travel documents. If it subsequently appears that Petitioner's removal is no longer reasonably foreseeable, he may file another petition.[4]

## CONCLUSION

For the foregoing reasons, Petitioner's application for relief under 28 U.S.C. § 2241 is denied, and this action is dismissed.

So Ordered.

---

[4] As noted earlier, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas v. Davis*, 533 U.S. at 701, 121 S.Ct. at 2505. To quote the Third Circuit, "[t]hat period is shrinking here." *Joseph v. United States*, No. 04-3817, 127 Fed. Appx. 79 at *2 (3rd Cir. 2005) (Unpublished).

Dated: Rochester, New York
April 29, 2008

                                ENTER:

                                /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge